MARSHA ANABLE F/K/A MARSHA ROUNDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anable v. Commissioner
Docket No. 1527-86.
United States Tax Court
T.C. Memo 1988-14; 1988 Tax Ct. Memo LEXIS 14; 54 T.C.M. (CCH) 1512; T.C.M. (RIA) 88014; January 11, 1988; As amended January 19, 1988 *14 R sent separate notices of deficiency to P for 1980 and 1981, neither of which was received by P; no timely petition was filed. Held: (1) The notice for 1980 sent by the Los Angeles District Office was not sent to P's last known address. P had filed an amended return for 1980 with the Fresno Service Center showing a new address in Illinois. The Fresno Service Center posted the amended return, assessed additional tax shown thereon, and forwarded the information to the Kansas City Service Center for levy. (2) The notice for 1981 sent by the Chicago District Office was sent to P's last known address, which was her actual address. Nondelivery resulted from P's resumption of her maiden name and failure to give clear and concise notification to R of that change of name. Petition dismissed for lack of jurisdiction as to either year. Alan F. Saake, for the petitioner. William G. Merkle, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: This case is before us on cross motions to dismiss for lack of jurisdiction. Resolution depends on whether separate statutory notices for 1980 and 1981 were sent to petitioner's last known address as of the date each notice was sent. Petitioner was a resident of Chicago, Illinois, at the time her petition was filed. Facts
During the years in issue, petitioner was married to George Steven Rounds (Rounds) and was known as Marsha R. Rounds. After a divorce in 1982, petitioner resumed use of her maiden name of Anable. At all material times, petitioner was employed by Northwest Airlines as a flight attendant. On or before April 15, 1981, petitioner and Rounds *16 filed a joint Federal income tax return, Form 1010, for 1980 with the Fresno Service Center. The address shown on the return was 535 Esplanade #305, Redondo Beach, California 90277 (the Redondo Beach address). In July 1981, petitioner separated from Rounds and moved to Lisle, Illinois. On or before April 15, 1982, a joint return for 1981 was filed by petitioner and Rounds, reporting an address of 5344 Riverview Drive, Lisle, Illinois 60532 (the Lisle address). This return was filed with the Internal Revenue Service Center in Kansas City, Missouri. On or about August 23, 1982, an amended 1980 return for "Steven and Marsha Rounds" at the Lisle address was filed with the Fresno Service Center. The amended return for 1980 reported an increased amount of tax, which was assessed in December 1982 by the Fresno Service Center. Because the amended return showed an Illinois address, it was redirected to the Kansas City Service Center, and no change of address was recorded by the Fresno Service Center. In April 1982, the Los Angeles District Office of the Internal Revenue Service commenced an examination of the original 1980 return. Prior to October 1982, correspondence addressed to *17 petitioner and Rounds at the Redondo Beach address was returned by the Post Office marked "Return to sender, not deliverable as addressed, unable to forward." Through November 12, 1982, the examining agent unsuccessfully attempted to locate a current address for petitioner and Rounds. In November 1982, petitioner moved from the Lisle address to 1510 North Dearborn, Chicago, Illinois 60610 (the Chicago address). On or about February 11, 1983, petitioner filed a 1982 income tax return under the name Marsha R. Anable, reporting the Chicago address. On March 29, 1983, the Los Angeles District Office sent a notice of deficiency for 1980 to petitioner and Rounds at the Redondo Beach address, determining a deficiency of $ 4,811.12. The notice was returned on April 6, 1983, marked "Return to sender, not deliverable as addressed, unable to forward." Respondent's agent checked only the Los Angeles District Office computer file, which continued to show the Redondo Beach address. On January 7, 1983, the Internal Revenue Service Chicago District Office began an examination of the 1981 joint return of petitioner and Rounds. On July 19, 1983, respondent sent an appointment letter to petitioner *18 and Rounds at the Chicago address; the letter was returned to respondent on July 21, 1983, marked "Return to sender, not deliverable as addressed, unable to forward." A subsequent computer check turned up the same address, as did an inquiry of petitioner's employer made August 22, 1983. The employer's response, dated August 29, 1983, referred to petitioner as "Marsha Rounds Anable." On or about February 6, 1983, petitioner filed a 1983 individual return showing her name as "Marsha R. Anable" and her address as the Chicago address. On June 21, 1984, respondent sent a letter concerning proposed adjustments to the 1981 tax liability of petitioner and Rounds to "Steven & Marsha Rounds" at the Chicago address. This letter was received by petitioner. On July 6, 1984, a follow-up letter was sent to petitioner and Rounds at the Chicago address; that letter, however, was returned by the Post Office on July 11, 1984, marked "Forwarding order expired 60610, returned to sender." The examination of petitioner's 1981 joint return was completed and, on December 31, 1984, a statutory notice for 1981 was sent, addressed to "Mr. Steven Rounds and Mrs. Marsha R. Rounds" at the Chicago address. *19 The notice determined a deficiency of $ 11,563 and an addition to tax of $ 578 under section 6653(a) [1] (plus 50 percent of the interest due on $ 1,550). The statutory notice was returned by the Post Office on January 7, 1985, marked "Forwarding order expired 60610, returned to sender." Further check of the computer files confirmed that the Chicago address was petitioner's last known address. Petitioner continued to live at the Chicago address until May 1985. The mailbox at that address listed her name as "Marsha Anable." Through 1984, she received some mail addressed to her as "Marsha Rounds" at that address, including the June 21, 1984, letter from the Internal Revenue Service. All computer address checks conducted by the Internal Revenue Service regarding the 1980 and 1981 examinations used the names "Steven and Marsha Rounds" and the social security number of Mr. Rounds. In accordance with limitations of computer capacity at the District Office and Service Center levels and of time, as a matter of practice, the Internal Revenue *20 Service did not conduct computer checks using a spouse's, or "secondary," social security number, such as that of petitioner. It was possible, however, to obtain such information by a special search of the national computer master file in Martinsburg, West Virginia. Upon receiving the letter proposing adjustments for 1981, dated June 21, 1984, petitioner consulted an attorney. The attorney prepared a protest dated July 17, 1984, directed to the Office of Regional Director of Appeals and mailed it with a power of attorney identifying his client as Marsha R. Anable at the Chicago address. The protest identified the taxpayer as "Marsha Anable (f/k/a Marsha Rounds)" and gave the Chicago address as her address. The protest further identified Rounds as petitioner's former husband and gave a North Hollywood, California, address for him. The protest was not mailed to the address set forth in instructions attached to the letter to which it responded, i.e., to the District Director, and the protest was not associated with the audit file governing petitioner's tax return for 1981. The petition was filed January 17, 1986, after petitioner's wages were levied upon pursuant to assessment *21 of the taxes determined for 1980. Analysis
Were the consequences not so unfortunate for petitioner, this case could be characterized as a "comedy of errors." In summary, nondelivery of the statutory notices resulted from (1) petitioner's move from California to Illinois, which is serviced by an Internal Revenue Service Center other than the one where her return for 1980 was filed; (2) the Internal Revenue Service's failure, upon receipt of the amended return for 1980, to correct records at the Fresno Service Center and the Los Angeles District Office to reflect the Illinois address; (3) petitioner's reversion to use of her maiden name in 1982; (4) respondent's failure to use petitioner's maiden name in addressing the notice of deficiency for 1981; and (5) petitioner's lawyer's failure to send the protest to the correct address. Among the facts to be considered here is whether petitioner did anything to conceal her address. See McPartlin v. Commissioner,653 F.2d 1185, 1191 (7th Cir. 1981), revg. an unreported order of this Court. No such evidence is apparent in this case. Petitioner testified that, on each occasion of a move, she notified the Post Office *22 of her correct forwarding address. She also filed timely returns for each subsequent year. We therefore attach more significance to whether or not the Internal Revenue Service exercised reasonable diligence in determining petitioner's last known address at the time each notice of deficiency was sent. The Court of Appeals for the Seventh Circuit, to which our opinion in this case would be appealable, has summarized the relevant authorities as follows: The Commissioner is authorized by 26 U.S.C. sec. 6212(a) to send a notice of deficiency to a taxpayer by certified or registered mail. Subsection (b) of section 6212 provides that notice "mailed to the taxpayer at his last known address, shall be sufficient."  * * *  [Fn. ref. omitted.] * * *  That phrase [last known address] is defined by neither the Internal Revenue Code nor the regulations promulgated thereunder by the Commissioner. Certain principles, however, have evolved from the substantial body of case law interpreting section 6212(b). In Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367, 374 (1974), affd. mem., 538 F.2d 334 (9th Cir. 1976), the Tax Court defined *23 "last known address" as "the taxpayer's last permanent address of a definite duration to which the taxpayer has directed the Commissioner to send all communications."  As a general proposition, the Commissioner is entitled to treat the address of the taxpayer appearing on the return being audited as the taxpayer's "last known address" absent "clear and concise notification from the taxpayer directing the Commissioner to use a different address." Id.  The Commissioner must, however, exercise reasonable diligence to ascertain a taxpayer's "last known address." Delman v. Commissioner,384 F.2d 929, 932 (3d Cir. 1967), cert. denied,390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968); O'Brien v. Commissioner,62 T.C. 543, 550 (1974); Alta Sierra Vista, Inc. v. Commissioner,62 T.C. at 374. Whether the Commissioner has properly discharged his obligation to reasonably ascertain a taxpayer's "last known address" is a question to be resolved upon the facts and circumstances of each case. * * *  [Fn. ref. omitted.] * * * * * * numerous cases have held that notice of a change of address is not accomplished *24 merely by filing a return that bears an address different than that appearing on the previously filed audited return. E.g., Luhring v. Glotzbach,304 F.2d 556, 558 (4th Cir. 1962); Kuebler v. Commissioner,38 T.C.M. 454, 455 (1979); Alta Sierra Vista, Inc. v. Commissioner,62 T.C. at 376; Budlong v. Commissioner,58 T.C. 850, 852-53 (1972). The Ninth Circuit Court of Appeals, on the other hand, consistently has held that a return subsequently filed with the same service center as was the audited return affords the Commissioner sufficient notice of the taxpayer's change of address. Cohen v. United States,297 F.2d 760, 773 (9th Cir.), cert. denied,369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962); Welch v. Schweitzer,106 F.2d 885, 887 (9th Cir. 1939); Georgia Pacific Corp. v. Lazy Two T Ranch, Inc., 76-2 U.S.T.C. par. 9666 (N.D. Cal. 1976). See generally Weinroth v. Commissioner,74 T.C. 430, 438 (1980). Recently, the District of Columbia Circuit Court of Appeals, faced with an issue similar to that presented in the instant case, *25 stated: "Although the adequacy of subsequently filed tax returns alone to provide notification of a change in address is questionable and unclear, notice of . . . [the taxpayer's new address] . . . was afforded and evidenced apart from his 1970 and 1971 income tax returns. Moreover 'a taxpayer's last known address must be determined by a consideration of all relevant circumstances.' Lifter v. Commissioner, [59 T.C. 818]supra at 821; and 'the Commissioner is required to exercise reasonable care and diligence in ascertaining and mailing a deficiency notice to the correct address.' Arlington Corp. v. Commissioner,183 F.2d 448, 450 (5th Cir. 1950). The controlling test therefore as to when the statutory time period for filing the petition for redetermination began is whether, in light of all the pertinent circumstances, the IRS noted reasonable in mailing the deficiency notice . . . "
Crum v. Commissioner,635 F.2d 895, 899 (D.C. Cir. 1980). This Circuit has never had occasion to explicitly consider the effect of subsequently filed returns upon the Commissioner's determination of a taxpayer's "last known address. *26 "  We find in the instant case, as apparently did the Crum court, that subsequently filed returns must be considered relevant when determining a taxpayer's "last known address."  This is particularly so when, as in the instant case, a subsequently filed return was filed with the same service center as was the return audited. * * * [8]
*27 The circumstances here are somewhat unique in that petitioner and Rounds filed an amended return for the same year as was being audited with the same Service Center as the original return for 1980. The amended return reflected an Illinois address. A witness for respondent explained the processing of that return as follows: Q. From that information and your own personal knowledge could you tell us when that return posted in the service center or when it was entered so it would be available for research at the service center's IDRS system? A. It was received in late August, but it did not post until the first part of October [1982]. Q. * * * would there have been any updates from the IDRS system at that time to the AIMS system to notify the District Director's office that there has been an address change? A. No, there was no update from one to the other. Q. And you previously stated there was no capability of doing that either? A. Correct. Q. What else from that transcript were you able to determine based on your research with regards to the assessment of that * * * return? A. It appears that in the assessment that posted in December of 1982 *28 was from that * * * return. And then there were subsequently two payments made that full paid the amount of that assessment. Q. * * * which service center or district office made that assessment? A. The assessment was made in Fresno. Q. So if the assessment was made in Fresno is there any way that the Los Angeles District Director would have had any knowledge of that assessment at or about that time? * * * A. I do not believe so. Q. * * * if that return had shown the Lisle address, [Text Deleted by Court Emendation] * * * could you explain how that notice of levy would have been issued by the Kansas City Service on * * * [April 11, 1983]. * * * A. * * * this levy did have the Lisle, Illinois address and there were two subsequent payments made in Chicago. * * *  When the master file was updated with the Illinois address it did not update the Fresno or California District Office AIMS file. Q. Did it have the capability of doing that? A. It did not have the capability of doing it and it moved the account to Kansas City because Illinois is one of Kansas City's district. So there was nothing left in Fresno or in the District Office out there, except the *29 AIMS information. Q. So if an examiner was completing his examination on or about November of 1982 he would have no way of knowing as to this assessment, or as to the change of address, would he? A. He would not have anything except his AIMS information, no. We draw two conclusions from the evidence. First, petitioner and Rounds did give clear and concise notification to the Commissioner that they had changed their address from Redondo Beach, California, to Lisle, Illinois. Second, when the statutory notice for 1980 was sent in March 1983, the national computer center and the Kansas City Service Center had petitioner's Lisle address in their records. Third, the Fresno Service Center had received and posted the amended return and assessed the amount of tax shown on it and "moved the account to Kansas City."  Under these circumstances, we believe that the failure to send the statutory notice to the Lisle address is attributable to a breakdown in respondent's procedures and is not fairly chargeable to petitioner. We therefore conclude that, as to 1980, the Commissioner did not exercise reasonable diligence because he failed to provide for a trail by which the taxddpayer's *30 correct address could be ascertained. See Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367, 374 (1974), affd. 538 F.2d 334 (9th Cir. 1976). In this regard, we consider that processing of the amended return for 1980 was the equivalent of corresponding with the taxpayers at their new address. [2] Such correspondence has been held to be evidence of the last address known to the Internal Revenue Service. See McPartlin v. Commissioner,653 F.2d at 1191-1192; Pyo v. Commissioner,83 T.C. 626, 634-637 (1984). A different situation exists with respect to 1981, however. The statutory notice was sent to the taxpayers' correct address; the failure is attributable to the failure to use the name Anable rather than Rounds. The parties have cited, and we have found, no case that has held that filing of a tax return for a subsequent year, with *31 a new address, under a new name, with a different Service Center, gives clear and concise notice to the Internal Revenue Service of a change of address. To the contrary, in Wallin v. Commissioner,744 F.2d 674, 676 (9th Cir. 1984), revg. a Memorandum Opinion of this Court, a case favorable to the taxpayer in other respects, the court commented that such a subsequent return gives almost no notice to the Internal Revenue Service. In Wallin v. Commissioner, supra, the Court of Appeals for the Ninth Circuit held that the Internal Revenue Service had failed to exercise reasonable diligence in failing to conduct a computer search using the wife's, i.e., the "secondary," social security number. The court commented: A taxpayer's social security number appears in only one of two locations on the tax return -- in the primary taxpayer's box or in the spousal taxpayer's box. The IRS has the ability to perform a computer search of both sets of social security numbers in order to discover a subsequent return filed under a different name or in a different state. This court noted in [United States v.] Zolla,724 F.2d [808] at 811 [9th *32 Cir. 1984)], that "the IRS must have clear guidance as to what information it must examine in determining a taxpayer's last known address."  Many taxpayers marry and divorce without notifying the IRS, other than by way of subsequent returns. Because the IRS has the capacity to perform a computer search for social security numbers found in both the primary taxpayer's box and the spousal taxpayer's box, it must do so where, as here, it is aware that the taxpayer has moved. [4]
[Wallin v. Commissioner,744 F.2d at 677,] Wallin is distinguishable, however, because the return in question was filed as a separate return by the taxpayer, and the subsequent returns were filed as joint returns with her new husband. The case before us now is [Text Deleted by Court Emendation] also unique, in that the notice was actually sent to the correct address but not delivered because of the change of name. Considering the entire record, we conclude that reasonable diligence was exercised when the computer records *33 were rechecked after the statutory notice for 1981 was returned undelivered. A key factor in our conclusion is that the letter concerning proposed adjustments for 1981 sent on June 21, 1984, addressed to Steven and Marsha Rounds, was delivered and received by petitioner. Petitioner's attorney's response to that letter was not delivered to or received by the District Director. In addition, the response of petitioner's employer showing her name as Marsha Rounds Anable could not constitute clear and concise notification from petitioner that petitioner desired to use the name Anable and would not receive mail addressed to her as Marsha Rounds. The statutory notice for 1981 was, therefore, sent to petitioner's last known address. We readily acknowledge that cases such as this are among the most difficult we face, because there is no satisfactory resolution. Either the taxpayer is denied a remedy in this Court, or the statute of limitations bars assessment of taxes that may be owing. Either way, we cannot render a decision on the merits. It is of little comfort to petitioner to say that she has a remedy by paying the tax for 1981 and suing for a refund in the District Court *34 or Claims Court. But we must. See Lewin v. Commissioner,569 F.2d 444 (7th Cir. 1978). Similarly, we recognize that it is virtually impossible for the Internal Revenue Service to exhaust every avenue of research in every case to effect actual delivery of a statutory notice. Thus the concept of "reasonable diligence" is an evolving one, taking account of technological limitations and advances as well as the mobility of the taxpayer population. See Pyo v. Commissioner,83 T.C. at 637 n.10. Some administrative improvements may result of necessity from an adverse decision. Petitioner's motion to dismiss for lack of jurisdiction will be granted as to 1980. Respondent's motion to dismiss for lack of jurisdiction will be granted as to 1981. [3]
*35 An appropriate order will be entered.
Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩
8. * * * we need not decide whether the Ninth Circuit's position merits adoption by this Circuit. We pause to note, however, that a taxpayer should not be expected to appreciate the separate responsibilities of the Commissioner's service centers and his offices located within the service centers. Crum v. Commissioner,635 F.2d at 900. This is particularly true when the Commissioner has apparently not sought to inform taxpayers by way of the numerous channels of communication at his disposal -- e.g., tax forms and informational publications -- that a change of address should be communicated by a taxpayer at a certain office of the Commissioner. Moreover, in this the age of sophisticated computer information storage and retrieval systems, the Ninth Circuit's position can hardly be deemed to impose an unreasonable burden upon the Commissioner. [McPartlin v. Commissioner,653 F.2d 1185, 1188-1190↩ (7th Cir. 1981).]
2. Respondent argues that, because petitioner had already moved from Lisle to Chicago, the Lisle address would not have been the correct address. From the evidence, however, it appears that mail was being forwarded from the Lisle address to the Chicago address as of March 1983. ↩
4. The D.C. Circuit in Crum v. Commissioner,635 F.2d at 900↩, noted that a computer search for a taxpayer's address takes less than a minute. 3. Petitioner has filed a motion for reasonable attorneys fees. That motion will be denied. See Sanders v. Commissioner,813 F.2d 859 (7th Cir. 1987); Weiss v. Commissioner,88 T.C. 1036, 1039↩ (1987). Regardless of the procedural constraints on such motions, in view of the closeness of these issues, we would not conclude that petitioner satisfied the requirements of sec. 7430.